Good morning, Your Honors. Again, my name is Lindsay Holm. I represent Plaintiff Appellant Cesar Rosas. I would like to focus on two questions today. The first, how does paying overtime or minimum wage to employees actually burden the defendant's religious freedoms guaranteed by the First Amendment? So is your position that there's no ministerial exception whatsoever to the wage claim statute? I think that's one argument on the table, Your Honors. Is that your position? Are you making that argument? I think we can't know the answer to that unless we do the constitutional balancing test. And in this case, there isn't a showing on the record that there's any burden on the defendant's religious exercise. Well, what would your position be hypothetically if we had a much smaller church than the Catholic Church that was unable to pay any wage whatsoever to its minister? The only thing they could provide was a roof over the minister's head. And it was up to the members of the small congregation to supply food and whatever else the minister and his family needed to get by in return for which the minister would see to the spiritual needs of this small little church. Would you insist that the wage claim statute should apply in that case? Well, the Minimum Wage Act itself does not provide an exemption for a minister or an employee of a religious organization. What does the Constitution say? You're precisely correct, Your Honor. It would be up to this Court to determine whether the First Amendment provided an exemption for the religious organization. And I submit here, fortunately, we don't have to determine whether an exemption exists for a minister because we cannot determine, based on the record, Cesar Rosa's position within the church. You have said, have we not, in prior cases that there is a ministerial exemption. Correct, Your Honor. In a Title VII string of cases, several, about five of them to be precise, the Court has found a ministerial exception where to adjudicate a claim would interfere either with an organization's ability to practice its religious beliefs or to select its minister. And I submit neither one of those. Well, going back to my hypothetical, if your insistence was that there is no ministerial exception to the wage claim of the parson. Stacy? Stacy, the clock's not running. I'm sorry about that. Ms. Holm, then if the result were that the congregation would have to fold because they couldn't afford to pay their minister, wouldn't that be a violation of the First Amendment? I submit that's simply not the facts before us. That's not my question. I'm trying to get you to agree that there might be a circumstance in which a ministerial exception would apply to a wage claim. Certainly there could be a ministerial exception under the right facts, and that's my point here is that it's a fact-specific inquiry that requires a constitutional balancing test specific to the claim at issue, specific to the statute at issue, the purpose and goals of those statutes, balanced against the interests of the defendants in exercising their religious freedom and being devoid of any excessive entanglement. And we can't do that analysis here. That was my second point, which I want to talk about today, is does Cesar Rosas primarily perform the tasks of a janitor or those of a religious leader? Well, we've got an admission in your complaint that he was seeking ordination through the Mexican Catholic Church, do we not? Correct. And as part of his training, he was sent to Marysville. We also have his allegation, and I would point the court to the excerpt of record at 236, in which he states he was hired to do maintenance of the church, and he also assisted with mass. And from that allegation, we can't determine whether he was primarily cleaning sinks or counseling parishioners. And the functional analysis requires us to look at the tasks performed and not the title of the employee of the church. And the aspirations of an employee are not dispositive. In the Alamo case, the Supreme Court case discusses this, where the associates in that case just did not want to be paid a minimum wage. They wanted to submit all of their life and their work to the organization they served. They aspired to serve God. Suppose we had a nun. Let's take Mother Teresa, who sees her calling as feeding and caring for the poor in India, and that's her ministry. Would the wage claim statute apply to her if she was doing that in the Yakima Valley? The statute applies to all employees of religious institutions. The question is whether the First Amendment would exempt her in that particular situation. And the question would be, would paying a minimum wage interfere with that particular religious organization's ability? What if she belonged to an order that had taken a vow of poverty? And in that example, the Alamo court instructed that the associates in that case could return their wages to the organization, the church. Has your client gone on to ordination now while we've waited to hear the suit? Your Honor, I don't know the answer to that question. Is he still in a program? I don't know the answer to that question. Have you been in contact with your client recently? I actually did not work on the trial of this case. I've only worked on the appellate briefs, and I've not been in contact with him. Do you have any authority to be here from your client? I do, but I haven't been in touch with him personally. Ever? No. Do you have written authority? I have not personally contacted him, no. Who hired you? Did Plaintiff hire you? Schrader, Goldmark, and Bender, and we have a contract with our client that indicates that a substitute counsel can represent a client in a brief or on appeal. Bollard instructs that whether a ministerial exception exists will depend on the particular state law claim at issue. Defendants do not dispute that the Minimum Wage Act is a law of neutral application with an unquestionably compelling state interest to further a long and proud history of protecting workers in Washington. It is broadly construed in favor of the employee. And I cite the Drinkwits case, it's a 2000 Washington case, and actually the Tift case, which the defendants cite, it's a 1995 case, which discusses how the act is construed in favor of the employee. Counsel, can I interfere? Sure. We sent a notice out, did we not, a month or so ago, to notify the Attorney General in this case. Have you had any contact? We heard nothing in response. We have heard nothing. We did submit a letter brief indicating that we did believe that the defendants should have notified the Attorney General under Federal Rule of Appellate Procedure 44. They've taken the position that they are not required to do so, that they're claiming no such thing. Well, we issued an order. I understand that. I haven't seen any. I don't see any Deputy Attorney General here, so I assume from their silence that they are not appearing today. And it could be because of the procedural posture of the case. We're on a judgment on the pleadings here, a sui sponte judgment on the pleadings. The minimum wage impact on the defendants is purely economical. It sets the floor of the wage. It does not require the court to inquire into a religious decision-making process. Well, but we have case law, do we not, that talks about the duties, the place of assignment in selecting the minister for a particular church. There is an economic impact attendant to those decisions, is there not? I would submit that selecting the wage, selecting the floor of the wage, is not the same as dictating through, for example, a Title VII constructive discharge claim, which could impact who the church can hire and fire, is the same thing. So this is an economic floor. It doesn't have the same impact as interfering with the church's self-governance and who they select as its religious leader. We're back to my hypothetical that you don't like, which is the church that can't afford even the minimum floor. And I don't see why that would not interfere with the church's selection of its ministry or ministers. And in that constitutional balancing test, the result may be First Amendment preclusion of the claim. And we just don't have those facts here. We have no showing in the court below. We have no opportunity to even submit briefs. You're saying that that would have to be determined with some kind of factual record like summary judgment motion or evidentiary hearing, not simply on the pleadings? Precisely, Your Honor. And the panel in the Elvig case, which I believe Judge Gould, you sat on, discussed the fact that without some indication that the Title VII claim would impact or was somehow inconsistent with the religious organization's beliefs, it could proceed past the pleading stage, at the very least. The court indicated this is not a summary judgment review. This is a review of a judgment granted on the pleadings, and there's a distinction there. Allowing this case to proceed is consistent with the rationale of the Supreme Court and the Eighth Circuit, both of whom have reasoned that a religious organization's compliance with the FLSA, another wage of the federal wage statute, resulted in minimal, if any, burden on the defendant employers. And that's the Alamo case again and de Arment v. D. L. Harvey. And again, in both of those cases, the employees had aspirations to serve God, to follow a religious belief, but that aspiration was not dispositive of the employee-employer relationship. I'd like to reserve the remainder of my time. Anything in the record of communication from the bishop in Mexico and the archbishop of the city of Seattle? No, there is not, Your Honor. Okay. We'll let you have your time on rebuttal. With the sleeping clock, you're already over time, but the rebuttal argument will help us. Now we have Ms. Kauser. You do? Ms. Kauser. And if 10 minutes is too short, just to be fair, why don't you change that to be 12 minutes? Well, I talk pretty quickly, so I'll get through it. Okay, good. Don't feel you have to spend 12 minutes, though. I'm a little bit chagrined. I just hope I'm as poised and eloquent as the law students were this morning. I do represent the Corporation of the Catholic Archbishop of Seattle, and that is the proper name for the appellee here. With me is Mr. Lovejoy, representing Father Ganez. I have been in contact with Amanda Goss of the Attorney General's Office, and they have decided not to participate in this decision. You should affirm the lower court. The lower court engaged in an extensive 12-page analysis of the ministerial exception when it applies, when it does not apply, that it emanates from the Constitution, not from Title VII, that it applies both to federal claims and to state laws, and it came down to analyzing which issues in the plaintiff's complaint would be covered and excluded by the ministerial exception. And what it comes down to, and the court did this properly, is answering basically two questions. Is the decision that was made one that is the type that is protected? This is hands down, over and over and over decided. Rate of pay. That's McClure. That's Elvig. That's Bollard. That's Gates and Washington State. That's Rayburn. That is everything. That is Shenandoah. Everything says, yes, rate of pay. If question number two is answered in the affirmative as well, and that would be does this plaintiff fall within that class of persons or within that job function that is protected? And the answer is yes, again, for a number of reasons. First, by his own admissions in his complaint that state I'm here with a spiritual purpose, for a spiritual function, on a spiritual mission. I am here by order of my Catholic archdiocese to fulfill my spiritual mission to become a Catholic priest ordained, and as part of that I am here and I am assisting with the church and serving mass. Maybe some of that function involved maintenance. I don't know. He says it does. But that's not the purpose, mission, and function for his existence in the church. Ms. Holmes said there was no factual inquiry or factual analysis below. That is because Mr. Rosas' status as a minister in the church was not disputed by himself in the underlying papers. He's not ordained, is he? He is not ordained. However, ordination is not the key. The key is the spiritual. If you look to the case law, they specifically state ordination is not required. One looks to the function, mission, and what that person is doing, and that has been factually asserted in the complaint and must be accepted as true. There's nothing in the record of the context in which he is completing his studies and possibility of ordination or whether he's been ordained or quit or whatever, right? That's correct because no discovery was performed. This was a 12b6 motion, so no discovery was performed. And there is no factual inquiry below because the plaintiff never disputed it. If you look at the original motion, I believe it's on excerpt 73-74, the archbishop specifically outlined the reasons why Mr. Rosas was included as a minister, why the ministerial exception applied to him as a minister of the church in the functions he was serving. That was never disputed in the responding papers. So that's why there was no factual inquiry. Certainly Mr. Rosas had the ability, had he been present and in touch with his counselor or whatever the reason is, I don't know, to say, no, you know, actually I was a maintenance worker who came up from Mexico to work on the church and I said some prayers and now the church is saying I'm a minister and that's wrong. That didn't happen. What happened is that we have a complaint that says, my archbishop sent me to this archbishop to continue my path to become an ordained priest and I am serving God in doing so and I'm assisting with mass. That is what the complaint says. Those are the facts, the only facts that we have to go on and they are the ones asserted by the plaintiff himself. We didn't create them. I think if you look at any of the case law, the first question, that's been answered. Whether it's a minimum wage law or any other rate of pay type question, that is a protected decision. If you look at the case law regarding the function, that gets a little stickier because the court does tend to look at the various functions. But here we've had sufficient allegations and facts alleged from which the court could properly and did properly assert that this is the type of function that we can't question. I have nothing more to say unless you have some further questions. Okay. I have no questions. Judge Tolman, Judge Beeser, no questions here. And you didn't need that two minutes. Okay. Thanks. Okay. Ms. Holm. Ms. Calzer has cited a string of cases which she contends all hold that the rate of pay is beyond the court's purview. In their brief, they say Bollard at 950 and Elvig at 931, and I've reviewed those cases and respectfully the Ninth Circuit has not said that the rate of pay is beyond the court's purview under the First Amendment. And the Minimum Wage Act has never been before this court on a First Amendment review. So I submit to the court that a constitutional balancing test is required so that we know exactly which harm that the defendants have expressed are automatically here by analogy to Title VII cases are on the table. Second, she contends that we've never disputed Cesar Rosa's status as a minister. We've never been able to submit a brief on that issue in the court below. Let me ask you this question, just procedurally. The defendants made, did they make a motion to dismiss on the pleadings? They made a motion to dismiss, a 12B6 motion, all claims, but then never raised the particular Minimum Wage Act claim in any of their briefs. The district court took it upon itself to dismiss Cesar Rosa's Minimum Wage Act claim. We requested that the court reconsider that decision as an error. So in response to their papers, did your client submit affidavits saying, okay, I went there, but I spent 90% of my time cleaning the grounds and 10% counseling people? Your Honor, neither of the parties raised the Minimum Wage Act claim. Because the defendants hadn't raised it as one of the claims to be dismissed, the plaintiffs didn't respond accordingly. Okay, thank you. Thank you, Your Honor. Okay, I guess we've reached the end of this challenging argument, so thank you very much. Thank you both. Nicely argued on both sides. We appreciate it. So the Rosas case shall be submitted.
judges: Beezer, Gould, Tallman